IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NORD SERVICE, INC. | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | **CASE NO.  2:06 CV 548** |
| | § | |
| JACOB PALTER, BORIS KEYSER, | § | |
| DAVIDSON DRILLING, LLC, DAVIDSON | § | |
| ENERGY, LLC, AND NORD FORMATION | § | |
| CUTTING TECHNOLOGY, INC. | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION

Nord Service, Inc. ("NSI") sued Jacob Palter, Boris Keyser, Davidson Drilling, LLC, Davidson Energy, LLC, and Nord Formation Cutting Technology, Inc. (collectively "Defendants") and alleged Palter and Keyser breached their fiduciary duties to NSI, converted NSI's property, breached their contractual obligations to NSI, made false representations to NSI, and defrauded NSI. Additionally, NSI alleges Defendants misappropriated NSI's trade secrets, stole NSI's property, conspired to appropriate NSI's property, and committed unfair trade practices against and unfairly competed with NSI.

Defendants allege NSI lacked capacity to initiate the current action and that the lawsuit is an ultra vires act.  The Court held a day and a half evidentiary hearing on the issues of NSI's ownership, who NSI's officers and directors are, and whether Sergey Nikolayevich Veselkov, who authorized the lawsuit purportedly on NSI's behalf, had the authority to bring the lawsuit on NSI's behalf.  The Court has considered the testimony, exhibits, arguments of counsel, and supporting memoranda, and now details its Findings of Fact and Conclusions of Law below pursuant to Federal

Rule of Civil Procedure 52(a).[1]  Defendants' Emergency Motion to Dismiss for Lack of Authority (Docket No. 129) is **DENIED**.

At the hearing, Defendants moved to strike the testimony of NSI's forensic document expert, Erich Speckin, on the basis that Speckin based a substantial portion of his opinion on the examination of photocopies.   For the reasons stated herein, Defendants' Motion to Strike is **DENIED**.

## BACKGROUND

NSI was founded for the purpose of commercializing services that employed and refined certain proprietary technologies designed to increase the productivity of, and to otherwise service, oil and gas well operations.  Palter served as on NSI's Board of Directors and as NSI's Secretary and Treasurer from around August 2004 to September 2005.  During his tenure, Palter hired his son-in-law, Keyser, who was also elected to NSI's Board of Directors.  Keyser served as NSI's Vice President of Marketing and was on NSI's Board of Directors.  Keyser was affiliated with NSI between August 2004 and September 2005.

Around September 2005, Palter's and Keyser's relationship with NSI soured.  NSI claims Palter enticed NSI's investors to invest over one million dollars in NSI and Palter and Keyser misused those funds.  NSI claims Palter and Keyser paid personal expenses with NSI funds and used NSI for their personal benefit.  Further, NSI claims Palter and Keyser used its resources to start and operate competing businesses, specifically Davidson Drilling, LLC, Davidson Energy, LLC, and Nord Formation Cutting Technology, Inc. ("NFCT").  Finally, NSI claims Palter and Keyser stole NSI's assets when they resigned.

---

[1] To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

Sergey Veselkov, allegedly with NSI's authorization, initiated this lawsuit on behalf of NSI on December 29, 2006.  Defendants contend NSI cannot sue Defendants under two theories: (1) Palter and Keyser own NSI and did not authorize this lawsuit; and (2) another company, Nefco Petroleum, LLC ("Nefco"), actually owns NSI, and Boris Goldstein, Chairman and CEO of Nefco subsidiary NSI, did not authorize this lawsuit.  Under the second theory, Defendants also claim NSI released Palter and Keyser from liability.  Defendants further claim NSI, as Nefco's subsidiary, owns Davidson Energy, LLC, Davidson Drilling, LLC, and NFCT.  All theories challenge NSI's standing to bring the current suit against Defendants.

## APPLICABLE LAW

NSI  must demonstrate by a preponderance of the evidence that it has standing to pursue its claims against Defendants.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The Constitution minimally requires NSI to show: (1) an injury in fact; (2) that the injury is fairly traceable to the alleged misconduct of the Defendants; and (3) that a favorable decision is likely to redress the injury.  *See id.*  To prove an "injury in fact, " NSI must show Defendants invaded  a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *See id.* (internal quotations omitted).

In the present action, to prove standing, NSI must show Veselkov properly authorized this lawsuit.  NSI is a Delaware corporation and Delaware law applies to determine the effect of NSI's corporate actions.

## PARTIES' CONTENTIONS

### NSI's Position

NSI contends Veselkov, as NSI's President and sole shareholder, properly authorized this lawsuit on behalf of NSI.  NSI admitted the following evidence at the hearing.

On August 3, 2004, Alex Mostovoi sent an email to Palter to confirm Palter's instructions to incorporate NSI in Delaware with Veselkov as NSI's sole shareholder.  Plaintiff's Ex. 121. Mostovoi filed NSI's Certificate of Incorporation with the Delaware Secretary of State Office the following day.  Plaintiff's Ex. 70.  The Certificate of Incorporation authorizes NSI to issue 100,000 shares of capital stock.  *Id.*  On August 9, 2004, Veselkov, Miohail Yuryevich Popov, Keyser, Anatoly Nikolayevich Ivanov, Valentin Timofeyevich Grebennikov, and Palter, all of whom comprised NSI's Board of Directors, signed a Unanimous Consent of the Board of Directors wherein the Board of Directors adopted Bylaws, elected officers, ratified the acts of the incorporator, and accepted Veselkov's offer to subscribe for 100 shares of common stock for $100.[2]  Plaintiff's Ex. 74.  NSI admitted into evidence an undated stock certificate that states Veselkov owns 100 shares of NSI common stock.  Plaintiff's Ex. 269.

On July 18, 2005, NSI filed a Delaware franchise tax return.  The Secretary of State's records show NSI was authorized to issue 100,000 shares of common stock and lists Veselkov as a director and Palter as an officer.[3]  On February 21, 2007, NSI filed a Delaware franchise tax return for NSI and the Secretary of State's records show NSI was authorized to issue 100,000 shares of common stock and lists Boureiko as a director and an officer.[4]

---

[2] Defendants previously asserted Anatoly Nikolayevich's signature was a forgery.  *Nord Service, Inc. v. Palter*, 2:06cv548, Docket No. 104.  Defendants did not offer any evidence at the hearing in support of their theory and did not contest the authenticity of the Unanimous Consent of the Board of Directors document.  Further, the parties stipulated, which the Court approved, that documents produced by NSI and Defendants that are identical shall be deemed authentic and admissible over any challenges to authenticity.  Plaintiff's Ex. 212; *Nord Service Inc. v. Palter*, 2:06cv548, Docket Nos. 84, 85.  NSI and Defendants each produced the Unanimous Consent of the Board of Directors.  Plaintiff's Ex. 74 (document produced by NSI); Plaintiff's Ex. 75 (document produced by Defendants). Thus, the Unanimous Consent of the Board of Directors is authentic.

[3] NSI did not introduce this document into evidence.  However, the Court takes judicial notice of the franchise tax return under Federal Rule of Evidence 201.

[4] NSI did not introduce this document into evidence.  However, the Court takes judicial notice of the franchise tax return under Federal Rule of Evidence 201.

On September 15, 2005, Veselkov executed a limited durable power of attorney that gave Boureiko the power to act on behalf of NSI to request, collect, and obtain information regarding the activity and operations of NSI and its officers, directors, and employees since NSI's incorporation on August 4, 2004.  Plaintiff's Ex. 78.

On September 19, 2005 Palter and Keyser signed a resignation letter and resigned from NSI as officers and directors.  Plaintiff's Ex. 79, Ex. 80.

On September 22, 2005, Veselkov, as NSI's sole shareholder, waived the shareholder notice requirement and called a special shareholder meeting.  Plaintiff's Ex. 224, Ex. 225.  The meeting minutes state "[t]he current directors have been recalled and have resigned, requiring the election of new directors."[5]  Plaintiff's Ex. 224.  At the meeting Veselkov elected Boureiko and himself to the Board of Directors.  *Id.*  Boureiko and Veselkov subsequently accepted their director positions.  Plaintiff's Ex. 226, Ex. 228.  Veselkov and Boureiko then waived the notice requirement, called a special Board of Directors meeting, elected Veselkov as NSI's President and Boureiko as NSI's CEO and Treasurer, elected other officers, and elected two new directors.  Plaintiff's Ex. 224, 230, Ex. 231.

On September 13, 2006, NFCT filed its 2005 federal income tax return as an S Corporation.  Plaintiff's Ex. 262.  The return lists Keyser and Palter as each owning 50% of NFCT's stock during the 2005 tax year.  *Id.*  NSI's expert witness, Jonathan E. Kemmerer, CPA, testified it would be improper for NFCT to elect S Corporation status if  NSI, which is a C Corporation, owned NFCT stock.

On September 25, 2006, Davidson Energy, LLC filed its 2005 federal income tax return.

---

[5] NSI did not submit evidence that Veselkov, Miohail Yuryevich Popov, Anatoly Nikolayevich Ivanov, or Valentin Timofeyevich Grebennikov resigned from NSI's Board of Directors.

Plaintiff's Ex. 100.  The tax return lists Palter and Keyser as each owning a 50% share of Davidson Energy, LLC's profits, losses, and capital during the 2005 tax year.  *Id.*

Davidson Drilling, LLC filed its 2006 federal income tax return on April 14, 2007. Plaintiff's Ex. 102.  The tax return lists Keyser as owning 50% of Davidson Drilling, LLC's profits, losses, and capital during the 2006 tax year.  *Id.*  The produced tax return includes the first page of Schedule K-1 for Palter but does not include the page that would delineate his ownership interest in Davidson Drilling, LLC.  *Id.*

On December 26, 2007, Jake and Inna Palter filed their 2005 federal income tax return. Plaintiff's Ex. 103.  The tax return lists nonpassive losses from NFCT and Davidson Energy, LLC that passed through those entities to Palter as a partner or shareholder.  *Id.*  The tax return also claims a $168,600 loss that resulted from the Palters' sale of Nord Services, Inc. stock they held from August 19, 2004 to December 31, 2005.  *Id.*

**Defendants' Position**

Defendants contend NSI cannot sue Defendants under two theories: (1) Palter and Keyser own NSI and did not authorize this lawsuit; and (2) Nefco owns NSI, and Boris Goldstein, Chairman and CEO of Nefco subsidiary NSI, did not authorize this lawsuit.  Under the second theory, Defendants also claim NSI released Palter and Keyser from liability.  Defendants further claim NSI, as Nefco's subsidiary, owns Davidson Energy, LLC, Davidson Drilling, LLC, and NFCT. Defendants admitted the following evidence at the hearing.

On October 30, 2007, Nonna Fisher produced a copy of NSI's Bylaws dated July 25, 2004 (the "In Formation Bylaws").  Plaintiff's Ex. 16.  The In Formation Bylaws contain the words "in formation" written on the front page and contains the signatures of Palter, Keyser, Veselkov, and Fisher.  *Id.*  Handwritten next to Veselkov's name is the date "January 25, 2004."  *Id.*  The In

Formation Bylaws list Palter and Keyser as the original stockholders, each owning 100,000 shares. *Id.*

Fisher testified she signed the In Formation Bylaws and saw Veselkov sign it in front of her. She further testified she saw Veselkov write "In Formation" on the front of the bylaws and write the "July 25, 2004" date next to his name.  Palter's deposition testimony generally corroborates Fisher's testimony.

Fisher also produced a copy of "Agreement No. 24/A," dated July 25, 2004, signed by Veselkov on behalf of Danfil Company Ltd. and Palter on behalf of NSI (the "Danfil Agreement"). Plaintiff's Ex. 249; Defendants' Ex. 51.  Under the Danfil Agreement, Danfil Company Ltd. agreed to loan NSI between five and six million dollars.  *Id.*  NSI promised to pay 28% interest on the loan and promised to pay 33% of its net profits to Veselkov each quarter.  *Id.*  The Danfil Agreement also contains images of embossments from what appear to be NSI and Danfil Company Ltd. seals. *Id.*

Defendants admitted a letter dated June 11, 2005 from Nefco's attorneys to Veselkov that states Nefco intended to file civil and criminal complaints against Veselkov and others in Russia. Defendants' Ex. 9.  Veselkov testified he never saw this letter prior to the current action.

Boris Goldstein produced a document titled "Agreement for Sale of Substantially All Assets," dated August 18, 2005, and signed by Tanya Sturman on behalf of NSI, Eve Goldstein on behalf of Nefco, and a witness.  Plaintiff's Ex. 5; Defendants' Ex. 11.  Boris Goldstein originally produced a copy, labeled BG57, and produced the original before the hearing.   Under the Agreement, NSI agreed to sell "all or substantially all" of its assets to Nefco who agreed to purchase NSI's assets.  *Id.*  NSI also warranted it would deliver NSI's common stock to Nefco.  *Id.*  On January 28, 2008, Lena Founk produced a draft copy of the "Agreement for Sale of Substantially

All Assets" that contained additional handwritten notes allegedly made by Veselkov.  Plaintiff's Ex. 17.

Founk testified Veselkov had her translate the draft of the Agreement and she billed him $86.00 for one to two hours of translation services.  In particular, she translated the paragraph of the Agreement that covered the amount of consideration Nefco paid NSI.  Founk further testified she spoke to Veselkov on the phone and had translated many documents for him.

Eve Goldstein testified she signed the Agreement and witnessed both Sturman, Veselkov's alleged "right-hand woman," and "some witness" sign the Agreement.  Zlata Stepanenko testified she signed as a witness to the Agreement and saw both Sturman and Eve Goldstein sign the Agreement.

Boris Goldstein produced a copy of a document titled "General Release," labeled BG59, dated September 11, 2005, and signed by Boris Goldstein and Veselkov.  Plaintiff's Ex. 7; Defendants' Ex. 13.  The copy also contains an image an embossment of what appears to be NSI's corporate seal.  *Id.*  The General Release purports to release all outgoing directors from all claims NSI had or may acquire against them.  *Id.*

Boris Goldstein produced a document titled "Corporate Resolution Authorizing Bulk Sale of Assets of Nord Service, Inc.," labeled BG56, dated December 10, 2005, and signed by Veselkov as an outgoing director.  Plaintiff's Ex. 4; Defendants' Ex. 22.  The document also contains an embossment from what appears to be NSI's corporate seal.  *Id.*  The Corporate Resolution adopts the Asset Purchase Agreement (BG57).  *Id.*  Though Boris Goldstein initially produced a copy, the original was later produced.  Eve Goldstein testified she witnessed Veselkov sign and emboss the resolution.

**NSI's Rebuttal Evidence**

Speckin testified he tested documents to determine if handwriting, signatures, and images of embossed seals had been manipulated.  He testified he also chemically examined ink on three documents to determine how long the ink had been on the paper.  Finally, he testified as to whether the embossed seal on the Corporate Resolution Authorizing Bulk Sale of Assets of NSI (BG56) matched the seal NSI introduced into evidence.  Veselkov also testified to rebut Defendants' allegations.

In Formation Bylaws

Veselkov testified he did not sign the In Formation Bylaws and had never met Fisher. Speckin concluded Fisher's signature on the In Formation Bylaws was copied from her signature on her October 25, 2007 affidavit.  Speckin also testified that signatures of Keyser and Veselkov from the In Formation Bylaws were identical to their signatures on the  Minutes of the Special Meeting of NSI (BG62).

Danfil Agreement

Speckin concluded Veselkov's signature from the Unanimous Consent of the Board of Directors had been copied to the Danfil Agreement.  Speckin also concluded Palter's signature from the Unanimous Consent of the Board of Directors was identical to his signature on the Danfil Agreement.

Agreement for Sale of Substantially All Assets (BG57)

Veselkov testified he had not seen the Agreement for Sale of Substantially All Assets prior to the litigation, that he did not know Sturman, and that the marks on the Founk draft were his handwriting but were copied from an unrelated sketch he gave to Palter and Keyser.  Veselkov testified he did not know Founk and did not have her translate the Agreement.

Speckin concluded Veselkov's handwritten notes on the Founk draft were copied from Veselkov's handwritten notes on another document produced by Founk.  Speckin examined the original document and concluded the signatures from Eve Goldstein and Sturman contained ink from the same manufacturer.  Speckin could not conclude when the paper was signed but testified it was most likely signed at least six months prior to the hearing.

Boris Goldstein produced Sturman's resignation letter, labeled BG58, dated September 19, 2005, where she resigned her position from NSI. Plaintiff's Ex. 6.  Speckin concluded Sturman's signature on the Agreement had been traced from her resignation letter based on the shaky line quality of the signature.  He examined a copy of the resignation letter to make this determination.

NSI Stock Certificate that Shows Nefco Owns 100,000 Shares (BG63)

Boris Goldstein produced a copy of a stock certificate, labeled BG63, dated August 22, 2005, and signed by Boris Goldstein and Fisher.  Plaintiff's Ex. 9.  The copy of the stock certificate states Nefco owns 100,000 shares of NSI's common stock.  *Id.*  The copy also contains the image of an embossment from what appears to be NSI's corporate seal.  *Id.*

 Speckin concluded Fisher's signature on the stock certificate copy was copied from her signature on her October 25, 2007 affidavit.

Nefco Resolution of the Sole Shareholder (BG64)

Boris Goldstein produced a document titled "Nefco Petroleum LLC Resolution of the Sole Shareholder," dated August 22, 2005, and signed by Boris Goldstein.  Plaintiff's Ex. 10.  Boris Goldstein originally produced a copy, labeled BG64, and someone later provided an original to Speckin.  The Resolution elects Boris Goldstein as Chairman of the Board and CEO of NSI, Eve Goldstein as Director and Vice President of NSI, and Fisher as NSI's Corporate Secretary.  *Id.*

Speckin concluded Boris Goldstein's signatures on the Nefco Resolution and the Resolution

10

of Board of Directors of NSI that authorized New York lawsuit are identical.  Speckin also concluded that Boris Golstein's signature on a document that purported to be the original of the Nefco Resolution is not same signature on the copy.

General Release (BG59)

Speckin concluded Veselkov's signature from the Unanimous Consent of the Board of Directors had been copied to the General Release.  Speckin also concluded the embossment image had been copied from the embossment on the Corporate Resolution Authorizing Bulk Sales of Assets to NSI (BG56).  Speckin also testified that the location of the embossment image—on the center of the page—indicated the embossment image was copied from the Corporate Resolution Authorizing Bulk Sales of Assets to NSI (BG56), as most pressure seals cannot reach into the center of the page.

Minutes of the Special Meeting of NSI (BG62)

Boris Goldstein produced a document titled "Minutes of the Special Meeting of Nord Service, Inc.," labeled BG62, dated December 9, 2005, signed by Palter, Keyser, Veselkov, and Fisher.  Plaintiff's Ex. 8.  The document, which is a copy, also contains an image of an embossment of what appears to be NSI's corporate seal.  *Id.*  The document states "Mr. Veselkov then proposed that it is in the best interests of [NSI] to conduct certain operations through and in the name of its wholly-owned subsidiaries, Nord Formation Cutting Technology Inc., Davidson Energy LLC; and Davidson Drilling LLC . . . ."  *Id.*  The document states NSI's Board of Directors unanimously adopted Veselkov's proposed agenda.  *Id.*  This document is the only evidence NSI owns NFCT, Davidson Energy, LLC, or Davidson Drilling, LLC.

Speckin concluded Fisher's signature on the copy of the Minutes of the Special Meeting was copied from her signature on her October 25, 2007 affidavit.  Speckin concluded Palter's signature

on the Unanimous Consent of the Board of Directors was identical to his signature on the Minutes of the Special Meeting.  Speckin also testified that the signatures of Keyser and Veselkov from the In Formation Bylaws were identical to their signatures on the  Minutes of the Special Meeting.

Speckin concluded the seal image had been copied from the embossment on the Corporate Resolution Authorizing Bulk Sales of Assets to NSI (BG56).  Speckin also testified that the location of the image—on the center of the page—indicated the image was copied from the Corporate Resolution Authorizing Bulk Sales of Assets to NSI (BG56), as most pressure seals cannot reach into the center of the page.

Corporate Resolution Authorizing Bulk Sale of Assets of NSI (BG56)

Veselkov testified he never signed the resolution.  He further testified he signed three blank sheets of paper for Palter to use to register NSI in Veselkov's absence.

Speckin examined the Corporate Resolution and tested the ink from Veselkov's signature. Speckin concluded Veselkov's signature had been on the paper since at least February, 2005. Speckin also testified that Veselkov's signatures on almost every other document touched the writing or text above or below the signature block and that Veselkov's signature did not align with the document's text.  Defendants presented Speckin with other documents where Veselkov's signature did not touch any text.  Defendant's Ex. 32.

Speckin testified that the original embossment on the Corporate Resolution Authorizing Bulk Sales of Assets to NSI (BG56) had a different image than the NSI seal introduced into evidence.

Resolution of Board of Directors of NSI that Authorized New York Lawsuit

On September 10, 2007, Boris Goldstein, as NSI's purported President and CEO, issued a Resolution of the Board of Directors that authorized Emanuel Zeltser, attorney for Defendants in the current action, to bring suit against Veselkov and Boureiko, among others.  Plaintiff's Ex. 18.

On December 2, 2007, Boris Goldstein swore in an affidavit filed with the Supreme Court of New York that Nefco owns 100% of NSI and Veselkov and Boureiko are not officers, directors, or shareholders of NSI.  Plaintiff's Ex. 255.

Speckin concluded Fisher's signature on the copy of the Resolution of the Board of Directors that retained Sterik & Zeltser was copied from her signature on her October 25, 2007 affidavit. Speckin also concluded Boris Goldstein's signatures on the Nefco Resolution of the Sole Shareholder (BG64) and the Resolution of Board of Directors of NSI that Authorized NY Lawsuit were identical.

## MOTION TO STRIKE SPECKIN'S TESTIMONY

### Applicable Law

Federal Rule of Evidence 702 allows testimony of a witness qualified as an expert by knowledge, skill, experience, training, or education if scientific, technical, or other specialized knowledge testimony will assist the trier of fact to understand the evidence or determine a fact in issue.  The expert witness may proffer fact and opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.  FED. R. EVID. 702.

Courts decide preliminary questions that concern a witness's qualifications and the admissibility of evidence.  FED. R. EVID. 104(a).  Courts assess a nonexclusive list of factors to determine whether scientific expert testimony is reliable.  *Id.* (advisory committee notes, 2000 amendments); *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993).  These factors include: (1) whether others can or have objectively tested the expert's technique or theory; (2) whether the technique or theory has been subject of peer review and publication; (3) the known or

potential error rate of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the scientific community has generally accepted the technique or theory.  FED. R. EVID. 702 (advisory committee notes, 2000 amendments); *Daubert*, 509 U.S. 593–94.

**Analysis**

As recounted above, Speckin testified many of the documents in the case were not authentic after he matched signatures, dated ink on original documents, and compared embossment images. Defendants object to Speckin's testimony under Rule 702 and cite *United States v. Garza*, 448 F.3d 294 (5th Cir. 2006).  The *Garza* Court held the lower court did not abuse its discretion when it excluded Garza's forensic document examiner under Rule 702, as the expert based her opinions upon an examination of photocopied documents.  *Id.* at 300.  Garza's expert planned to testify that the witness signatures on Garza's confessions were forgeries.  *Id.* at 299.  The expert's opinion was based upon examination of six photocopied documents, four of which the expert knew the witness had signed and two of which Garza alleged were forgeries.  *Id.*

The district court concluded "I find that [the expert's] testimony, based on the examination of copies, comparing them . . . without any knowledge about how often they had been copied, whether that's a . . . a copy of a copy, I find that [the expert's] testimony would not be reliable under Rule 702."  *Id.* at 300.  The appellate court noted that even if the trial court erred when it excluded Garza's expert, the error was harmless, as the fact finder can compare signatures to determine authenticity.[6]  *Id.*  Further, the trial court admitted the copies into evidence and gave Garza the opportunity to cross examine the person who allegedly signed as a witness to Garza's confession

---

[6] In addition, the trial court excluded the expert's testimony on the basis that Garza did not follow the Court's discovery rules.  *U.S. v. Garza*, 448 F.3d 294, 299–300 (5th Cir. 2006).

and consent to search documents.  *Id.*

Speckin's examination of photocopies does not exclude his testimony under Rule 702.  The excluded expert in *Garza* was to testify as to whether, after an examination of four photocopies of the witness's signature and two photocopies of the confession and consent to search documents, the person who signed the four photocopies also signed the confession and consent to search documents.

Speckin did not perform a handwriting analysis, and it is irrelevant how often each document had been copied.  Speckin testified that marks, signatures, and corporate seal embossments had been copied from originals or were copies of each other.  This determination necessarily requires examination of at least one photocopy.  Thus, *Garza* does not exclude Speckin's testimony under Rule 702.[7]

## ANALYSIS

**Authenticity of Documents**

At the hearing, NSI put in issue the authenticity of many documents.  Under Federal Rule of Evidence 901(a), a document's authenticity is a condition precedent to that document's admission into evidence.[8]  To show a document is authentic, the document's proponent  must produce evidence sufficient to support a finding that the document is what its proponent claims.  *Id.*

In Formation Bylaws

The In Formation Bylaws, dated July 25, 2004, are not authentic.  Fisher's signature is

---

[7] Defendants did not object to Speckin's testimony on the basis that he was not a qualified expert or that his testing methods, had he not used copies to form certain opinions, would render his testimony inadmissable under Rule 702.  Additionally, even if *Garza* applied, the Court could still compare the signatures on the documents to determine their authenticity.  *Garza*, 448 F.3d at 300.

[8] Many of these documents were only introduced into evidence by NSI for the limited purpose to show they are not authentic.  Defendants introduced into evidence the following documents: Danfil Agreement; Agreement for Sale of Substantially All Assets; General Release; and Corporate Resolution Authorizing Bulk Sale of Assets of NSI.  The Court, however, will address each document that supports Defendants' theories.

copied from her signature on her October 30, 2007 affidavit.  Veselkov testified he never signed the bylaws and the testimony of Fisher and Palter to the contrary was not credible.  Second, the In Formation Bylaws purport to issue 200,000 shares of stock while the Delaware Secretary of State franchise tax returns show NSI was authorized to issue 100,000 shares of stock.

However, even if the In Formation Bylaws were authentic, they would not be sufficient to show Palter and Keyser each own 50% of NSI.  Under Delaware law, a corporation comes into existence when the certificate of incorporation is filed with Delaware Secretary of State.  8 Del. Code § 106.  The parties do not dispute Mostovoi incorporated NSI on August 4, 2004.  At the time that Palter, Keyser, Veselkov, and Fisher allegedly signed the In Formation Bylaws, NSI did not exist as a corporation and could not issue stock.  Further, there is no evidence NSI adopted the In Formation Bylaws.[9]  Thus, NSI is not governed by In Formation Bylaws, and Palter and Keyser do not own 50% of NSI's common stock.

Danfil Agreement

Defendants did not prove the Danfil Agreement, dated July 25, 2004, is authentic. Veselkov's signature was copied from the Unanimous Consent of the Board of Directors, dated August 9, 2004.  The void in Veselkov's signature on the Unanimous Consent of the Board of Directors, which runs through most of that document, appears in Veselkov's signature on the Danfil Agreement.

Agreement for Sale of Substantially All Assets (BG57)

Defendants did not prove the Agreement for Sale of Substantially All Assets, dated August

---

[9] Even if NSI adopted the In Formation Bylaws, the provision that issues 200,000 shares would be ineffective, as it conflicts with the certificate of incorporation.  8 Del. Code § 109(b) ("The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.").

18, 2005, or its draft copy are authentic.  Sturman's signature was most likely traced from the

signature on her resignation from the Board of Directors, dated September 19, 2005 (BG58).  The

handwritten markings on the draft copy are identical to and most likely were copied from Veselkov's

notes on another document.  Eve Goldstein's testimony, in addition to Stepanenko's testimony, was

not credible.  Defendants also did not provide testimony from Sturman.

## NSI Stock Certificate that Shows Nefco Owns 100,000 Shares (BG63)

The NSI stock certificate that shows Nefco owns 100,000 shares of NSI stock, dated August

22, 2005, is not authentic.  Fisher's signature on the copy of the stock certificate was copied from

her signature on her October 25, 2007 affidavit.

## Nefco Resolution of the Sole Shareholder (BG64)

The Nefco Resolution, dated August 22, 2005, is not authentic.  The original document

Defendants produced had a different signature on it than the copy.  Further, Defendants did not

produce Boris Goldstein or any witness with knowledge of the document.

Even if the Nefco Resolution were authentic, Boris Goldstein could not call a special

shareholder meeting as there is no evidence he or Nefco owned at least 40% of NSI stock on August

22, 2005.[10]  Further, there is no evidence NSI shareholders, to the extent others owned NSI stock,

---

[10] Under Delaware law, a corporation's Bylaws may contain any provision, not inconsistent with law or the
Certificate of Incorporation, that relates to the business of the corporation, the conduct of the corporation's affairs,
and the rights and powers of the corporation, its stockholders, directors, officers, or employees.  8 Del. Code §
109(b).  NSI's Bylaws state the following:

Section 2.2. Special Meetings.  Special meetings of stockholders, unless otherwise prescribed by
law, may be called at any time by the Chairman of the Board or by order of the Board of Directors
or by the holder or holders of at least 40% of the voting power of the outstanding shares of the
capital stock of the Corporation.  Special meetings of stockholders shall be held at such place
within or without the State of Delaware as shall be designated in the notice of meeting, or may be
held by telephone conference or other similar means, or by written consent.

Plaintiff's Ex. 77.

were provided notice or waived the notice requirement.[11]   Even if the Agreement for Sale of

Substantially All Assets (BG57) were authentic, Defendants did not show Sturman, even if she acted

on behalf of NSI, had the authority to convey Veselkov's NSI stock.   *See* 8 Del. Code § 159 ("The

shares of stock in every corporation shall be deemed personal property . . . .").   Thus, Boris

Goldstein, as sole owner of Nefco, could not call a shareholder meeting and elect new directors of

NSI who would subsequently elect new officers.

General Release (BG59)

Defendants did not prove the General Release, dated September 11, 2005, is authentic.

Veselkov's signature was copied from the Unanimous Consent of the Board of Directors and the

image of an embossment from NSI's corporate seal, located on the middle of the page, was copied

from the Corporate Resolution Authorizing Bulk Sale of Assets (BG56), dated December 10, 2005.

Minutes of the Special Meeting of NSI (BG62)

The Minutes of the Special Meeting, dated December 9, 2005, are not authentic.  Fisher's

signature on the copy of the Minutes of the Special Meeting was copied from her signature on her

October 25, 2007 affidavit.  Additionally, the image of the embossment of NSI's corporate seal was

copied from the Corporate Resolution Authorizing Bulk Sale of Assets (BG56), dated December 10,

---

[11] NSI's Bylaws state the following:

Section 2.6. Notice of Meetings.  Written notice, stating the place, date and time of the meeting, and in the case of a special meeting, the purpose of purposes for which the meeting is called, shall be given to each stockholder entitled to vote thereat at his address as it appears on the records of the corporation, not less than ten (10) days nor more than sixty (60) days before the date of the meeting.

Section 7.4. Waiver of Notice.  Whenever any notice is required to by given under any provision of law, the Certificate of Incorporation or these Bylaws, a written wavier thereof, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to notice.

Plaintiff's Ex. 77.

2005.

The Minutes of the Special Meeting of NSI also conflict with NFCT's and Davidson Energy, LLC's 2005 federal income tax returns, which do not list NSI as owning any interest in either entity. Further, the parties do not dispute that Palter and Keyser resigned from NSI's Board of Directors in September 19, 2005, two months before they, as NSI directors, allegedly signed the Minutes of the Special meeting.  In total, Defendants presented no evidence that NSI purchased Davidson Energy, LLC, Davidson Drilling, LLC, or NFCT.

Corporate Resolution Authoring Bulk Sale of Assets to NSI (BG56)

Defendants did not prove the Corporate Resolution, dated December 10, 2005, is authentic. The ink from Veselkov's signature is at least ten months older than the document's date, which is consistent with Veselkov testimony that he gave Palter three sheets of paper signed in the blank. Second, the embossment on the document does not match the embossment from the seal NSI produced at the hearing.

**Standing**

Under Delaware law, a corporation comes into existence when the incorporator files the Certificate of Incorporation with the Delaware Secretary of State.  8 Del. Code § 106.  Thus, NSI came into existence on August 4, 2004.  The Certificate of Incorporation authorized issuance of 100,000 shares of capital stock.

The Board of Directors, unless limited by the Certificate of Incorporation or Bylaws, manages the corporation's business and affairs.  8 Del. Code § 141(a).  A corporation's Board of Directors can act by unanimous consent, and on August 9, 2004, NSI's Board of Directors acted by unanimous consent and adopted NSI's Bylaws, elected officers, ratified the acts of the incorporator, and, in exchange for $100, issued 100 shares of NSI common stock to Veselkov.  8 Del. Code §

141(f); 8 Del. Code § 152 ("The board of directors may authorize capital stock to be issued for consideration consisting of cash, any tangible or intangible property or any benefit to the corporation, or any combination thereof.").  NSI produced a stock certificate that states Veselkov owns 100 shares of NSI common stock.

A corporation's Bylaws may contain any provision, not inconsistent with law or the Certificate of Incorporation, that relates to the business of the corporation, the conduct of the corporation's affairs, and the rights and powers of the corporation, its stockholders, directors, officers, or employees.  8 Del. Code § 109(b).  Under Section 2.2 of NSI's Bylaws, the holder of at least 40% of the voting power of the outstanding shares of NSI's capital stock may call a special shareholder meeting.  Under Section 3.4, shareholders may elect directors at a special shareholder meeting by a plurality of votes cast at the special meeting.  Section 2.6 requires each shareholder to receive written notice of the place, date, time and purpose of the shareholder meeting at least 10 days before and not more than 60 days before the meeting's date.  A shareholder entitled to notice under Section 2.6 can waive the notice requirement in writing under Section 7.4.

On September 22, 2005, Veselkov, as NSI's sole shareholder, called a special shareholder meeting and waived the notice requirement in writing.  The meeting minutes state that all directors had resigned.  NSI did not admit evidence at the hearing that the entire Board of Directors had resigned as of September 22, 2005.  The Court construes the meeting minutes statement that all directors had resigned as evidence that Veselkov removed the remaining directors at the special shareholder meeting.  Veselkov, as NSI's sole shareholder, had this removal power under Section 3.6 of the Bylaws, which allows a majority of the voting power of the shares then entitled to vote to, with or without cause, remove any director at any time.  Veselkov, as sole shareholder, subsequently elected himself and Boureiko to the Board of Directors.

20

Section 3.12 of NSI's Bylaws allows special Board of Directors meetings upon the request of two directors.  Under Section 3.7, the existing Board of Directors may fill vacant directorships.  Under Section 4.2, the Board of Directors may elect newly created or vacant principal officers at a special meeting of the Board of Directors.  Section 3.13 requires NSI to give notice of a special Board of Directors meeting to each director but the notice requirement is waived if all directors are present at the meeting.  Directors entitled to notice under Section 3.3 may waive the notice requirement under Section 7.4.

After the special shareholder meeting, Veselkov and Boureiko held a special Board of Directors meeting.  As every NSI director was present, notice was not required, though Veselkov and Boureiko waived the notice requirement in writing.  At the meeting, the Board of Directors elected  Veselkov as President and Boureiko as CEO and Treasurer, elected  two new directors, and elected other officers.

On December 29, 2006, NSI sued Defendants.  At that time, Veselkov owned 100% of NSI's common stock and was NSI's President.  Thus, Veselkov had authority to initiate suit on NSI's behalf.[12]  As a result, NSI had, and continues to have, standing to sue Defendants.

---

[12] The Board of Directors exercises all corporate powers, which includes the power to conduct litigation that seeks to redress harm inflicted upon the corporation.  *See Agostino v. Hicks*, 845 A.2d 1110, 1115–16 (Del. Ch. 2004) (citing 8. Del. Code § 141(a)).  In the instant case, there is no evidence that NSI's Board of Directors authorized or objected to the instant action.  However, three of NSI's four directors, Veselkov, Boureiko, and Valentin Timofeyevich Grebennikov, were sworn in as witnesses at the hearing and appeared on NSI's witness list.  *Nord Service, Inc. v. Palter*, 2:06cv548, Docket No. 188.  Thus, it is unlikely NSI's Board of Directors did not authorize the current lawsuit, as a plurality of its directors appeared at the hearing on NSI's behalf.

Section 4.9 of NSI's Bylaws give the President "general supervision over the business" of NSI and "all powers and duties usually incident to the office of the President except as specifically limited by a resolution of the Board of Directors."  As there is no evidence the Board of Directors authorized or objected this suit, Veselkov, as President, has the power to sue Defendants to protect NSI's interests until limited by NSI's Board of Directors.  There is no evidence NSI's Board of Directors have so limited Veselkov's power.

Finally, even if NSI's Board of Directors were required to pass a resolution to authorize this suit but refused to do so, Veselkov, as NSI's sole shareholder, could call a special shareholder meeting under Section 2.2 of NSI's Bylaws, remove objecting directors under Section 3.6 of NSI's Bylaws, and initiate suit.  Thus, it is unlikely NSI's Board of Directors, elected by Veselkov and Boureiko, oppose Veselkov's initiation of this action on NSI's behalf.

**CONCLUSION**

For the abovementioned reasons, the Court **DENIES** Defendants' Motion to Strike Speckin's testimony.   NSI has shown by a preponderance of the evidence that Veselkov, as NSI's sole shareholder and President, properly authorized this lawsuit on NSI's behalf.  Thus, NSI has standing to sue Palter, Keyser, Davidson Drilling, LLC, Davidson Energy, LLC, and NFCT**.**  Defendants' Emergency Motion to Dismiss for Lack of Authority (Docket No. 129) is **DENIED**.

**So ORDERED and SIGNED this 3rd day of March, 2008.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**